**Roy C. LEWELLEN, Jr., et al., Plaintiffs,**

v.

**Gene RAFF, Individually and In His Capacity as Prosecuting Attorney for The First Judicial District of Arkansas, et al., Defendants.**

**No. H–C–86–34.**

United States District Court, E.D. Arkansas, E.D.

Dec. 8, 1986.

John Walker, Little Rock, Ark., and George E. Hairstun, New York City, for plaintiffs.

John Clayton, House, Wallace, Nelson & Jewell, David S. Mitchell and Tim Humphries, Asst. Attys. Gen., Mel Sayes, Lovett Law Firm, James Moody, Kathlyn Graves and Gregory Jones, Wright, Lindsey & Jennings, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

GEORGE HOWARD, Jr., District Judge.

Roy C. Lewellen, Jr., Esq. has petitioned this Court for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, enjoining Circuit Judge Henry Wilkinson, Prosecuting Attorney Gene Raff and Deputy Prosecuting Attorney David Cahoon of the First Judicial District, Lee County, Arkansas, from conducting a trial of the criminal action styled *State of Arkansas v. Roy C. Lewellen,* No. 85–50, currently pending in the Lee County Circuit Court. Lewellen is charged with the criminal offense of "Attempted Witness Bribery", a Class C felony which imposes a sanction of not less than three years nor more than ten years in the Arkansas Department of Correction and a fine not exceeding $10,000.00, and alternatively, Criminal Conspiracy, a Class D felony, which imposes a sanction not to exceed six years in the Arkansas Department of Correction, and a fine not exceeding $10,-000.00.[1]

Lewellen instituted this action on April 28, 1986, seeking injunctive and declaratory relief and damages against Raff and Cahoon, as well as others.[2] At the time, Lewellen's criminal case had been continued for trial on February 7, 1986, to May 19, 1986.

On May 14, 1986, Lewellen applied to this Court for a temporary restraining order to enjoin Raff and Cahoon from proceeding to trial on May 19, 1986, in the state action following the denial of Lewellen's request for a continuance by the state trial judge.

On May 14, 1986, this Court conducted a hearing on Lewellen's request for a tempo-

---

1. On November 14, 1986, this Court entered an order temporarily restraining a scheduled trial of the case on November 17, 1986. A hearing on Lewellen's request for a preliminary injunction commenced on November 24, 1986. The temporary restraining order was extended an additional ten days by this Court *sua sponte* on November 25, 1986.

2. Judge Henry Wilkinson was made a party defendant to these proceedings pursuant to Lewellen's amended complaint on September 23, 1986. Only declaratory judgment and injunctive relief are sought against Judge Wilkinson.

rary restraining order, and at the conclusion of the hearing, directed counsel to submit memoranda briefs on May 15, 1986. However, the Court was advised on May 15, 1986, that the parties and counsel had agreed that the state criminal trial would be continued pending a hearing on the merits in this action by this Court. The state trial judge, by order dated May 16, 1986, continued the state criminal trial for that term. Accordingly, this Court entered an order on May 16, 1986, permitting Lewellen to withdraw, without prejudice, his request for a temporary restraining order.

This case was scheduled for trial on the merits for September 8, 1986, but was continued at the request of Lewellen because his counsel had been directed to appear in the Court of Appeals for the Eighth Circuit in an unrelated proceeding before that Court.

On October 10, 1986, during pre-trial docket call, Judge Wilkinson, *at the request of Cahoon,* but over the objections of Lewellen's state court counsel, scheduled Lewellen's criminal action for trial on November 17, 1986.[3]

On October 27, 1986, Lewellen filed his supplemental motion for a temporary restraining order following his counsel's inability to get the November 17th trial setting continued.

Lewellen, a black attorney residing and engaged in the general practice of law in Eastern Arkansas, has alleged, among other things, the following in support of his request for injunctive relief:

1. That the criminal bribery charges, instituted against him by way of an information by Raff and Cahoon, is a bad faith prosecution designed and calculated to harass and retaliate against him because "he is a black attorney who vigorously defended his client [in a state criminal proceeding in Lee County Circuit Court wherein Raff and Cahoon are serving as prosecutors and Lewellen as defense counsel], that he has a growing legal practice, and is a candidate for political office running against a political ally of defendant Sheriff May."

2. That Raff and Cahoon, as prosecutors, have a history of treating black attorneys differently than white attorneys and have pursued a course of retaliation in the pending state criminal proceeding against Lewellen and "other cases".

3. "... Defendants ... acted willfully, knowingly, purposely, and in bad faith with the specific intent to deprive the plaintiff ... of his right to be free from illegal search and seizure; free from unlawful arrest and prosecution without evidence in support thereof; freedom to engage in his chosen line of employment and profession without discrimination on the basis of his race; and, his right to freedom of association and political affiliation and candidacy for public [office] ..." (¶ 88 of amended complaint).

4. That Raff and Cahoon engaged in electronic surveillance without legal justification and a judicial warrant in order to obtain evidence to establish probable cause for the state criminal proceeding.

5. That Raff and Cahoon caused the publication of defamatory material before the state criminal charges were filed and in the midst of an ongoing investigation by the defendants of the purported charges; that Raff and Cahoon are cur-

---

**3.** During the pre-trial docket call by Judge Wilkinson, L. Ashley Higgins, one of Lewellen's attorneys in the state criminal case, requested Judge Wilkinson to recuse in that action since Judge Wilkinson had been made a party defendant in this proceeding. While the record does not reflect what action, if any, was taken by Judge Wilkinson on counsel's recusal request, it is clear that Judge Wilkinson stated "[t]he court is going to set the matter for trial" because the federal district court action had not been concluded.

This Court is persuaded and so finds that all counsel concerned in both the state criminal proceeding and this action agreed that Lewellen's state criminal case would not proceed to trial until after this Court had conducted a trial on the merits in this proceeding. It is plain and beyond debate that a litigant cannot complain subsequently about a procedure to which he has consented.

rently pursuing a course of retaliation against Lewellen.

After scrutinizing the circumstances surrounding the institution of the criminal charges against Lewellen by Raff and Cahoon, from the evidence received during a hearing involving approximately six (6) days, this Court makes the following additional findings:

Lewellen claims and asserts that the criminal charges instituted against him were instituted in bad faith in order to harass, intimidate and retaliate against him and without an expectation of a valid conviction of such charges because of his race and Lewellen's refusal to engage in plea bargaining with regard to a client charged with the crime of rape and demanded that his client be afforded a speedy jury trial to the end that his client's guilt or innocence be determined without delay; because of Lewellen's decision, against the advice of Sheriff May, to run as a candidate for a state senatorial position against an incumbent who was a friend and ally of the County Sheriff; and because Lewellen was critical of and resisted the disparate treatment accorded black attorneys by public officials in the administration of justice in Lee County, Arkansas, as contrasted with the recognition afforded white attorneys.

An example articulated by Lewellen of the alleged disparate treatment, in the administration of justice in Lee County, is the evidence that the trial court denied virtually every pretrial discovery motion filed by Lewellen seeking materials from the prosecuting attorney to the end that Lewellen might adequately prepare for the defense of his client in the pending rape trial. Sam Blount testified that Sheriff May told him that the state trial judge had denied all of Lewellen's pretrial motions in the rape case because the trial judge was displeased with Lewellen's demeanor and conduct in his court.[4] Lewellen also testified that Sheriff May advised him that he needed to take steps to apologize to the trial judge and Raff if he wanted, in effect, to get back in their good graces and minimize the consequences that could flow from Lewellen's criminal case.

The Court notes that there is a strong likelihood that Lewellen will establish that the criminal charges lodged against him were attended with undue publicity resulting in impairment of first amendment rights.

This Court is of the opinion that the purported conduct retaliated against or sought to be impeded involve federal rights secured under the Federal Constitution[5]; Lewellen has demonstrated that the criminal prosecution initiated by Raff and Cahoon against Lewellen was brought in bad faith for the purpose of retaliating for the exercise of his constitutionally protected rights. This Court is of the opinion that the criminal charges instituted against Lewellen would not have been filed absent the desire to retaliate against Lewellen for exercising his federally protected rights. Therefore, this Court is persuaded that Lewellen has established that unless the requested relief is granted he will suffer great and immediate irreparable harm. *See, Munson v. Janklow*, 563 F.2d 933 (8th

---

**4.** Lewellen testified that during jury selection in the rape case he was defending, he objected to the procedure being employed by the trial judge and received a strong admonishment from the trial judge in open court; that later, he saw the trial judge and Raff eating lunch together in the Lee County jail and advised the trial judge that he, Lewellen, wanted to renew his objections to the jury selection procedure when the trial resumed. Again the trial judge harshly rebuked Lewellen for questioning the judge's integrity. Lewellen states that this is the conduct that displeased Raff and the judge.

**5.** The Court notes that the scheduling of Lewellen's criminal case for trial on October 10, 1986, for November 17, 1986, took place twenty-four (24) days prior to the General Election conducted on November 4, 1986, in which Lewellen was running as an Independent against a Democratic incumbent, when Lewellen was defeated. This Court is of the opinion that there is a strong likelihood that Lewellen can establish that his opponent in the senatorial race made reference to this scheduling during the campaign, and that the scheduling was calculated to impede and impair his First Amendment rights. This, of course, can be determined during a hearing on the merits in this proceeding.

Cir.1977). This Court is further persuaded that the injury Lewellen faces is something more than the incidental inconvenience and injury that every defendant confronts in a criminal prosecution brought lawfully and in good faith. Here, Lewellen has demonstrated that the state prosecution against him was brought in bad faith for the purpose of retaliating and harassing him for the exercise of constitutionally protected rights.

Lewellen has demonstrated that Raff and Cahoon had no expectation of a valid conviction when they lodged the charges against Lewellen, and thus, there is a substantial likelihood that Lewellen will prevail on the merits.

The Court notes that the evidence reflects that Raff, after hearing the alleged tape recording of statements made by Lewellen, Defendants' Exhibit E–2 which is central to the criminal charges lodged against Lewellen, stated, in essence, that the tape was insufficient to support a charge of witness bribery under Arkansas Law and directed Sheriff May and State Police Officer Williams to engage in further electronic surveillance which was immediately done.[6] But, in the opinion of this Court, the supplemental taping when considered together with Defendants' Exhibit E–2 does not alter the Court's belief that there is a substantial likelihood that Lewellen will prevail in establishing that Raff had no reasonable expectation of getting a conviction of Lewellen. The poor quality and the unexplained gaps in the tapes as well as the testimony of Mr. Patterson, one of the alleged participants in the taped conversations, that there are certain deletions and alterations in the tapes persuade this Court that there is a strong likelihood that Lewellen will be successful in demonstrating the lack of any probative value flowing from Defendants' Exhibit E–2 and the supplemental taping, or demonstrate that the prejudicial effects flowing from the use of the tapes outweigh any probative value.

In addition, there is a strong likelihood that Lewellen can demonstrate that it is a fairly common practice in Arkansas for lawyers to serve as intermediaries in seeking to have criminal charges pending against a client "dropped" or "nol prosed" which Lewellen contends was the only role that he played resulting in the criminal charges lodged against him.[7]

In balancing the equities between Lewellen and defendants in considering whether a preliminary injunction should or should not be granted, the Court is persuaded that the harm likely to be visited upon Lewellen, if the requested relief is not granted, outweighs any injury to defendants if the state criminal proceeding is enjoined pending a final determination of this proceeding on the merits.

Lewellen's complaint and the evidence describe an environment in which Lewellen will not be assured adequate vindication of due process and equal protection in the Lee County Circuit Court for it is asserted that the judiciary in Lee County is flawed and is not an independent branch of the county government[8]; and that the prosecutorial

---

**6.** The Court notes that at the time the electronic surveillance was conducted, which has been conceded by all was done without a judicial warrant, Act 707 (Ark.Stat.Ann. § 41–4501, *et seq.*), passed in 1985 by the Arkansas General Assembly, required court approval prior to any interception of wire or oral communications. Whether this requirement is relevant or material in any way to Lewellen's request for injunctive relief can be determined at the time the Court conducts the final hearing to determine whether Lewellen is entitled to a permanent injunction.

**7.** Ollie Neal, personal attorney for Mrs. Patterson, the State's key witness in Lewellen's crimi-

nal case, testified that Lewellen "never made me any kind of offer, any kind of deal", but Lewellen had stated that Lewellen had heard that the prosecuting witness, Mrs. Patterson, wanted to have the charges dismissed.

**8.** Ollie Neal, an attorney who has practiced law in Lee County for approximately seven years, testified "[i]f Gene [Raff] is not happy with you, you are not going to get a continuance because of Raff's influence over the court. Gene uses that to bring you in line. It is clear to me that Judge Yates is controlled by Mr. Raff and that Judge Wilkinson is most responsive." Neal testified further that on occasions he has observed "Raff and Judge Yates going to court in the

power is so strong that its abuse will have such a detrimental effect upon Lewellen before a state proceeding terminates.[9] This Court is persuaded that there is a strong likelihood that Lewellen will be successful in establishing this claim in a hearing on the merits.

The Court is further persuaded that the public's interest in the maintenance and enhancement of a criminal justice system free of bad faith and harassment would, indeed, be implemented and furthered.

Sheriff May testified that he can recall that the Lee County Grand Jury has been summoned only once to consider a criminal matter under investigation during his twelve years as sheriff of Lee County, and that this was the time that he was being investigated for gambling, while serving as sheriff, and the Grand Jury exonerated him by a vote of 14 to 2.

Lewellen testified that Sheriff May advised him that he, Lewellen, should go to Raff and apologize and that he could avoid some of the difficulties confronting him. Lewellen further testified that Sheriff May said that in 1972, when May was under investigation by a Lee County Grand Jury, May went to Raff and apologized to Raff and "Gene fixed the Grand Jury."

Indeed, this Court is of the view that no benefit will be derived by giving deference to the state proceeding in which the trial judge, moreover, has previously stayed the criminal proceedings pending an adjudication of the merits in this proceeding. Moreover, this Court is persuaded that the State of Arkansas "does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights." *Wilson v. Thompson,* 593 F.2d 1375 (5th Cir.1979). In this regard, the Court in *Wilson, supra,* observed:

> State officials disposed to suppress speech could easily do so by bringing oppressive criminal actions pursuant to valid statutes rather than by enacting invalid statutes or using other parts of the state legal machinery, and § 1983 would give no effective relief unless they happen to warn their victims in advance....
>
> When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction.

Therefore, Lewellen's request for a preliminary injunction enjoining defendants from conducting a trial of his criminal action currently pending in the Circuit Court of Lee County, Arkansas, should be granted.

IT IS THEREFORE, ORDERED:

That Gene Raff, Esq., David Cahoon, Esq. and Circuit Judge Henry Wilkinson, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, are hereby enjoined from proceeding with the trial of plaintiff Roy C. Lewellen, Jr. in criminal case No. 85–50, currently pending in the Lee County Circuit Court of the First Judicial District of Arkansas pending adjudication of this action on the merits.

IT IS FURTHER ORDERED that plaintiff Roy C. Lewellen, Jr. post with the Clerk of the Court a bond in the sum of $1,000.00 for payment of such costs and

---

same car"; that Raff, Cahoon and Circuit Judges Yates and Wilkinson treat black lawyers differently than white lawyers.

9. As an illustration of the power possessed, in addition to his duties as Prosecuting Attorney for the First Judicial District, Mr. Raff is a member of the Arkansas State Police Commission which possesses the responsibility to approve or disapprove promotion or demotion of state police personnel, and review each application for employment presented to the commis-sion by the Director for certification to the eligibility list.... to hear appeals and approve, or disapprove, any disciplinary action taken against an employee by the Director that results in transfer or loss of rank, pay or seniority. [Ark.Stat.Ann. § 42–403.2 (Repl.1977) ].

These two public positions are held simultaneously by Mr. Raff as a consequence of a purported Legislative Act passed by the Arkansas General Assembly.

damages as may be suffered or incurred by defendants if it be determined that the relief afforded herein is wrongful.

IT IS SO ORDERED this 8th day of December, 1986.